UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY CONARD, | : | Civil No. 1:15-CV-351 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Rambo) |
| | : | |
| PENNSYLVANIA STATE POLICE, | : | |
| et al., | : | (Magistrate Judge Carlson) |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The instant case is the latest iteration of an on-going, decade-old dispute

between the *pro se* plaintiff, Kelly Conard, and her former employer, the Pennsylvania

State Police. In 2006 Conard, who had formerly worked for the state police between

1985 and 2002, sued the state police and two state police officials, Dennis Hile and

Joseph Tripp, alleging that between 2002 and 2005 the defendants engaged in acts of

gender discrimination, retaliated against Conard due to her exercise of her First

Amendment rights, and denied Conard equal protection of the laws.  These claims

were either withdrawn, or denied by the district court which dismissed this case, and

the dismissal of this lawsuit was affirmed by the United States Court of Appeals for

the Third Circuit in January of 2010.  Conard v. Pennsylvania State Police, 360 F.

App'x 337, 338 (3d Cir. 2010).

Five years then passed, until February of 2015 when Conard, acting *pro se*, filed the instant lawsuit. (Doc. 1.) In Conard's *pro se* complaint, which she subsequently amended on August 31, 2015, (Doc. 12), the plaintiff seems to reprise her prior allegations of First Amendment retaliation, reviewing at great length these previously discredited and dismissed allegations of retaliation and discrimination. (Doc. 12, ¶¶1-30.) After detailing these past allegations, spanning conduct which took place tens years ago, Conard alleges that she has recently applied for employment, but has been denied jobs allegedly due to adverse prior employment references from the defendants. (Doc. 12, ¶¶31-36.) On the basis of these allegations, Conard, acting *pro se*, has now lodged new First Amendment retaliation claims against the defendants, the Pennsylvania State Police, and her former supervisors, Sergeants Joseph Tripp and Dennis Hile. (Id.)

The defendants have now moved to dismiss this amended complaint. (Doc. 14.) Conard has responded to this motion to dismiss, in part, by filing a brief and declaration which contain new and additional factual averments, (Docs. 18-21), a course of conduct which inspired the state police to file a motion to strike these pleadings (Doc. 23), which purport to make new factual allegations beyond those set forth in the amended complaint.

2

In this case, we find that the plaintiff's current amended complaint, on occasion conflates past and present claims, advances meritless or time-barred claims and names improper party-defendants. Therefore, we believe that the motion to dismiss should be granted. We further find that Conard's response to this motion to dismiss in some instances serves to further highlight the factual uncertainty and lack of clarity in a number of these claims, since the plaintiff's brief in opposition to the motion to dismiss articulates new and different factual grounds and legal theories in support of a number of these claims and causes of action. The elusive nature of a number of these claims makes ultimate resolution of some claims extremely difficult, but highlights to necessity of greater clarity on the plaintiff's part in the articulation of these claims. Accordingly, for the reasons set forth below,  we recommend that the defendants' motion to strike be denied, but it is further recommended that the court direct the plaintiff to file an amended complaint providing a more definite statement of the remaining claims set forth in this case.

## II.    Discussion

### A.    Motions to Dismiss–Standard of Review

A motion to dismiss is designed to test the legal sufficiency of a complaint. Thus, Rule 12(b)(6) of the  Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which

relief can be granted. The moving party bears the burden of showing that no claim has been stated, <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. <u>Id</u>. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting <u>Twombly</u>, 550 U.S. at 555). Thus, "[a]t the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements. <u>See Iqbal</u>, 556 U.S. at 678–79, 129 S.Ct. 1937; <u>Twombly</u>, 550 U.S. at 555–57, 127 S.Ct. 1955; <u>Burtch</u>, 662 F.3d at 220–21." <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 681 (3d Cir. 2012).   As the

4

court of appeals has observed: "The Supreme Court in <u>Twombly</u> set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' <u>Iqbal</u>, 129 S.Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' <u>Id</u>. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011) <u>cert. denied,</u> 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

Thus, in assessing a motion to dismiss the court engages in a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to

an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Two other considerations guide us in addressing this particular motion to dismiss, where we are asked consider a complaint whose claims are occasionally

unclear and where the gravamen of the claims, as alleged in the complaint differs from the assertions made by the plaintiff in her reply to the defendants' motion to dismiss. First, it is well-settled that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion. Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6).").

In addition, when a plaintiff's complaint is less than clear, the Court may, *sua sponte,* order the plaintiff to file a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure in order to clarify the claims the plaintiff asserts against the defendants. See, e.g., Kyeame v. Buchheit, No. 1:07-CV-1239, 2011 WL 3651369, at *1 (M.D. Pa. Aug. 18, 2011); MFS, Inc. v. Twp. of South Annville, No. 1:05–CV–1371, 2006 WL 3254535, at *7 (M.D.Pa. Nov.9, 2006); see also Moore's Federal Practice, § 12.36 (Matthew Bender 3d ed.) ("Because of its potential usefulness ... courts will occasionally order a more definite statement *sua sponte*, which they have the freedom to do "); Fikes v. City of Daphne, 79 F.3d 1079,

1082–83 (11th Cir.1996) (finding that a more definite statement can tighten a complaint and clarify which of several possible claims are being asserted).

## B.    A Number of the Plaintiff's Claims Should Be Dismissed

Applying these legal benchmarks, we find that a number of the claims set forth in this complaint fail as matter of law and should, therefore, be dismissed.

### 1.    The Eleventh Amendment to the United States Constitution Bars This Lawsuit Against the State Police, a State Agency, or State Officials Sued in Their Official Capacity

At the outset, in this case dismissal of the state police from this amended complaint is warranted because the amended complaint fails to meet the substantive standards required by law with respect to this state agency, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States. Indeed we note that this *pro se* complaint runs afoul of  basic constitutional and statutory rules limiting lawsuits against state agencies and officials.

First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI. By its terms, the Eleventh Amendment

strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Pennsylvania State Police, and the Commonwealth clearly has not waived its immunity. Quite the contrary, The Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S.A. §8521(b). This, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, See 42 Pa.C.S.A. §8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution

of the United States." 42 Pa.C.S.A. §8521(b).

The constitutional protections afforded to the states under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's criminal justice system like the Pennsylvania State Police. Therefore, the "Eleventh Amendment bars claims for damages against the P[ennsylvania] S[tate] P[olice], a state agency that did not waive its sovereign immunity. See 71 P.S. §§ 61, 732–102; Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir.2009)." Atkin v. Johnson, 432 F. App'x 47, 48 (3d Cir. 2011). Moreover as a matter of statutory interpretation, the plaintiff cannot bring a damages action against this state agency or state officials in their official capacity since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983, the principal federal civil rights statute. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

In sum, Conard's federal civil rights claims for damages against the State Police, and the individual defendants to the extent that they are sued in their official capacity, are barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. §1983. Therefore, since this agency of state government cannot be sued in this fashion in federal court, the State Police should be dismissed as a defendant from this action.

Likewise, damages claims against the individual defendants in their official capacity should also be dismissed.[1]

2.      **A Number of The Claims in The Current Complaint Fail to Meet the Pleading Standards Prescribed by Law Because They Are Barred by the Statute of Limitations**

The current amended *pro se* complaint, which reprises prior allegations of First Amendment retaliation dating back to 2002 through 2005, (Doc. 12, ¶¶1-30), also fails in some respects to state a claim within the period of the statute of limitations upon which relief can be granted.

It is well-settled that federal civil rights claims like those made here brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a

---

[1]Of course, if Conard can satisfy the other legal requirements for a civil rights action she may be able to bring claims against these individuals in their individual capacity.

continuing wrong theory, a plaintiff must make an exacting showing to avail herself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related  acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d

at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001)

In this case, Conard devotes great attention to complaining about matters which occurred between 2002 and 2005, more than a decade ago. (Doc. 12, ¶¶1-30.)  With respect to these long-past events, in every instance Conard immediately attached a high degree of significance and permanence to the events set forth in this complaint, since she filed an unsuccessful lawsuit relating to these matters in 2006. Thus, as to these events, Conard recites well-pleaded facts in this amended complaint which clearly reveal that, to the extent these events entailed violations of the plaintiff's constitutional rights, those violations were known and recognized by the plaintiff when they first occurred, many years ago. Thus, these events plainly had the degree of significance and permanence which should have triggered the plaintiff's awareness of his duty to assert her rights. Therefore, in this case a straightforward application of the two-year statute of limitations also compels dismissal of any claims in this action pre-dating 2013 as untimely.

**3.      To the Extent That Conard Seeks to Re-litigate Claims That**

## **Were Previously Dismissed, the Doctrine of Collateral Estoppel Applies and Bars Re-litigation of These Matters**

In addition, Conard's latest complaint appears, in part, to attempt to re-litigate a matter which has previously been conclusively resolved by the federal courts. Specifically, this latest complaint appears to pursue claims alleging that between 2002 and 2005 the defendants engaged in acts of gender discrimination, retaliated against Conard due to her exercise of her First Amendment rights, and denied Conard equal protection of the laws. These claims, however, were all either withdrawn, or denied by the district court which dismissed Conard's 2006 lawsuit, and the dismissal of this lawsuit was affirmed by the United States Court of Appeals for the Third Circuit in January of 2010. Conard v. Pennsylvania State Police, 360 F. App'x 337, 338 (3d Cir. 2010).

In our view, upon a preliminary review of this, Conard's latest lawsuit, the *res judicata*, collateral estoppel and issue preclusion doctrines apply and compel dismissal of any of the previously litigated claims that are made by the plaintiff in Conard v. Pennsylvania State Police, 360 F. App'x 337, 338 (3d Cir. 2010). Collateral estoppel, *res judicata* and issue preclusion are doctrines which play a vital role in litigation. It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now . . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy,

predictability, and freedom from harassment....' <u>Gregory v. Chehi</u>, 843 F.2d 111, 116 (3d Cir.1988). Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' <u>Melikian v. Corradetti</u>, 791 F.2d 274, 277 (3d Cir.1986)." <u>Electro-Miniatures Corp. v. Wendon Co., Inc</u>. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " <u>Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co.</u>, 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting <u>In re Graham</u>, 973 F.2d 1089, 1097 (3d Cir.1992)); <u>see also Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. <u>Parklane Hosiery</u>, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. <u>See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.</u>, 402 U.S. 313, 324 (1971); <u>Parklane Hosiery</u>, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the

issue in the first action. See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007). Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated.  Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997). This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law. See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that, with respect to at least some of  the claims made by Conard in the instant complaint, the legal requisites for issue preclusion are fully satisfied, since: " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979).  Therefore,

these claims, relating to events that allegedly occurred between 2002 and 2005, should be dismissed.

### 4.     Conard Has Not Sufficiently Alleged a Retaliation Claim

Furthermore, at bottom Conard appears to be trying to allege a new First Amendment retaliation claim against these defendants. That claim, as currently pleaded, seems to rest on little more than the failure of the defendants to provide positive employment references for Conard, a former employee who unsuccessfully sued the state police more than a decade ago.

In bringing this First Amendment retaliation claim Conard faces an exacting burden of pleading and proof.  A plaintiff claiming that officials have retaliated against her for exercising her constitutional rights must plead and prove the following three elements: (1) the conduct in which she engaged was constitutionally protected; (2) she suffered adverse action at the hands of officials; and (3) her constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to the obligation to demonstrate that she suffered an adverse action, a plaintiff must demonstrate that she suffered action that "was sufficient to deter a person of ordinary firmness from exercising h[er] rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

The third essential element to a retaliation claim is that there be a causal link

between the exercise of a constitutional right and the adverse action taken against the

plaintiff. <u>Rauser</u>, 241 F.3d at 333-34. To establish this third, and crucial, component

to a constitutional retaliation claim, causation, a plaintiff must plead facts allowing a

reasonable inference of causation. In this setting:

> To establish the requisite causal connection a plaintiff usually must
> prove either (1) an unusually suggestive temporal proximity between the
> protected activity and the allegedly retaliatory action, or (2) a pattern of
> antagonism coupled with timing to establish a causal link. <u>See Krouse v.
> American Sterilizer Co.</u>, 126 F.3d 494, 503-04 (3d Cir.1997); <u>Woodson
> v. Scott Paper Co.</u>, 109 F.3d 913, 920-21 (3d Cir.1997). In the absence
> of that proof the plaintiff must show that from the "evidence gleaned
> from the record as a whole" the trier of the fact should infer causation.
> <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 281 (3d Cir.2000).

<u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished

that:

> A court must be diligent in enforcing these causation requirements
> because otherwise a public actor cognizant of the possibility that
> litigation might be filed against him, particularly in his individual
> capacity, could be chilled from taking action that he deemed appropriate
> and, in fact, was appropriate. Consequently, a putative plaintiff by
> engaging in protected activity might be able to insulate himself from
> actions adverse to him that a public actor should take. The point we
> make is not theoretical as we do not doubt that public actors are well
> aware that persons disappointed with official decisions and actions
> frequently bring litigation against the actors responsible for the decisions
> or actions in their individual capacities, and the  actors surely would
> want to avoid such unpleasant events. Thus, it would be natural for a
> public actor to attempt to head off a putative plaintiff with the

unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts. Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir.2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997))  . . .

> [T]he Third Circuit Court of Appeals has suggested that a temporal
> proximity of two days is sufficient to establish causation, see Farrell v.
> Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas
> a temporal proximity of ten days is sufficient to establish causation only
> when accompanied by other evidence of . . . wrongdoing, Shellenberger
> v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir.2003). This suggests
> that the temporal proximity must be measured in days, rather than in
> weeks or months, to suggest causation without corroborative evidence.

Conklin v. Warrington Tp., No. 06-2245,  2009 WL 1227950, *3 (M.D.Pa. April
30,2009)

Applying this standard, courts in civil rights cases have frequently rebuffed

speculative efforts to infer causation from temporal proximity when a span of weeks,

months or years separated the plaintiff's constitutionally protected conduct from the

defendants' alleged acts of retaliation. Thus, "[o]ur sister courts have held that a

temporal proximity of as little as seventeen days was insufficient to establish

causation. See Killen v. N.W. Human Servs., Inc., No. 06-4100, 2007 WL 2684541,

at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was

insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting

that temporal proximity of seven weeks would be insufficient to establish causation);

Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa.

Oct.29, 2007) (holding that temporal proximity of one and one-half months was

insufficient to establish causation); Mar v. City of McKeesport, No. 05-19, 2007 WL

2769718, at *4 (W.D.Pa. Sept.20, 2007) (holding that temporal proximity of three

months was insufficient to establish causation).” Fischer v. Transue, 04-2756, 2008 WL 3981521, *10 (M.D.Pa. Aug. 22, 2008)(holding that temporal proximity of three weeks was insufficient to establish causation).

In practice, application of these legal tenets has often led to the rejection of retaliation claims as legally insufficient when those claims are like the retaliation assertion made here: An assertion of retaliation based solely on circumstantial proof of some temporal link between the plaintiff's conduct and the defendants' actions when the evidence shows that these events are separated by a significant temporal gulf. See, e.g., DeFranco v. Wolfe, 387 F. App'x 147 (3d Cir. 2010)(denying inmate cell transfer retaliation claim, two months temporal proximity insufficient); Bailey v. Commercial National Insurance Co., 267 F. App'x, 167 (3d Cir. 2008)(employment discrimination-retaliation case, four months temporal proximity insufficient); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month period insufficient);  Conklin v. Warrington Tp., No. 06-2245,  2009 WL 1227950 (M.D.Pa. April 30, 2009)(two months temporal proximity insufficient); Rogers v. Delaware, Dept. of Public Safety/DMV 541 F.Supp.2d 623, 627 (D.Del. 2008)(10 months insufficient);Brown v. Boeing, 468 F.Supp.2d 729 (E.D.Pa. 2007)(3-4 months insufficient); Lumban-Tobing v. Potter, No. 04-979, 2005 WL 2100691 (M.D. Pa.

Aug. 30, 2005)(9 months insufficient temporal proximity, but other proof creates factual issue precluding summary judgment).

Here, as currently pleaded, Conard's amended complaint describes events that are separated by a decade or more; that is, a complaint filed by Conard in 2006, and disposed of entirely by 2010, relating to events which are alleged to have transpired in 2002 through 2005. Conard then insists that these temporally remote events have led to acts of retaliation, in the form of negative job references, at unidentified dates in 2014, many years after the underlying events recited in this complaint. Without greater clarity and precision in her pleading and proof, we are hard pressed to find that these temporally remote events, spanning more than a decade in time, can be stitched together to form a coherent First Amendment retaliation claim. Therefore. It is recommended that this claim also be dismissed.

## C.     **The Defendants' Motion to Strike Should Be Denied But the Plaintiff Should be Required to Re-Plead and Provide a More Definite Statement of Her Claims**

Perhaps recognizing the spare nature of her amended complaint, Conard has responded to this motion to dismiss, in part, by filing a brief and declaration which contain new and additional factual averments. (Docs. 18-21), a course of conduct which inspired the state police to file a motion to strike these pleadings which purport

to make new factual allegations beyond those set forth in the amended complaint. (Doc. 23.)

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike pleadings and provides, in part, that:

> **(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

F. R.Civ. P., Rule 12(f).

While rulings on motions to strike rest in the sound discretion of the court, Von Bulow v. Von Bulow, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987), that discretion is guided by certain basic principles. Because striking a pleading is viewed as a drastic remedy, such motions are "generally disfavored." Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (C.A.La., 1982). As one court has aptly observed: "striking a party's pleadings is an extreme measure, and, as a result, . . . '[m]otions to strike under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.' Lunsford v. United States, 570 F.2d 221, 229 (8th Cir.1977) (citing 5 Wright & Miller, Federal Practice and Procedure. Civil § 1380 at 783 (1969)). See also, Resolution Trust Corp. v. Gibson, 829 F.Supp. 1103, 1106 (W.D.Mo.1993); 2 James Wm. Moore et al., Moore's Federal Practice § 12.37[1] (3d

ed. 2000)." <u>Stanbury Law Firm v. I.R.S.</u>, 221 F.3d 1059, 1063 (8th Cir. 2000). In practice, courts should exercise this discretion and strike pleadings only when those pleadings are both "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party. <u>Ruby v. Davis Foods, Inc</u>., 269 F.3d 818, 820 (7th Cir. 2001).

Moreover, consistent with this sparing approach urged by the courts with respect to motions to strike, those "pleadings" that may be subject to a motion to strike are construed narrowly. Recognizing that briefs are, by their nature, argumentative and sometimes contentious filings, it is generally held that a brief–as opposed to other forms of pleadings– typically will not be considered a "pleading" which is properly the subject of a motion to strike. <u>Hrubec v. National R.R. Passenger Corp.</u>, 829 F.Supp. 1502, 1506 (N.D.Ill.,1993), citing <u>Anna Ready Mix, Inc. v. N.E. Pierson Const. Co.</u>, 747 F.Supp. 1299, 1303 (S.D.Ill.1990), and <u>Board of Education v. Admiral Heating and Ventilation, Inc.</u>, 94 F.R.D. 300, 304 (N.D.Ill.1982).

In this case, upon consideration of this motion to strike we find that the object of that motion, a brief, is not the appropriate subject of a motion to strike. <u>Hrubec v. National R.R. Passenger Corp.</u>, 829 F.Supp. 1502, 1506 (N.D.Ill.,1993). Furthermore, recognizing that "[m]otions to strike under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted," <u>Lunsford v. United States</u>, 570 F.2d 221, 229

24

(8th Cir.1977), we find that it has not been shown that the assertions in this brief are both "redundant, immaterial, impertinent, or scandalous" and unfairly prejudicial. Ruby v. Davis Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001). Therefore, in the exercise of our discretion, Von Bulow v. Von Bulow, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987), we would decline this motion to strike.

However, having reached this conclusion we also note that it is well-settled that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion.  Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)."). Therefore, to the extent that Conard tries to further amend her complaint through the expedient of adding claims and facts in her response to this motion to dismiss, these efforts are legally unavailing, and should be rejected by this court.

In this case, the precise legal and factual basis for Conard's claims is often unclear, and conflate both current and time-barred matters. Beyond this legal

uncertainty, in some instances the factual averments made in support of claims seem to rest on shifting sands. Presented with these obstacles to an informed understanding of the plaintiff's claims, we note that, when a plaintiff's complaint is unclear, the court may, *sua sponte,* order the plaintiff to file a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure in order to clarify the plaintiffs' claims. See, e.g.,  Kyeame v. Buchheit, No. 1:07-CV-1239, 2011 WL 3651369, at *1 (M.D. Pa. Aug. 18, 2011); MFS, Inc. v. Twp. of South Annville, No. 1:05–CV–1371, 2006 WL 3254535, at *7 (M.D.Pa. Nov.9, 2006); see also Moore's Federal Practice, § 12.36 (Matthew Bender 3d ed.) ("Because of its potential usefulness ... courts will occasionally order a more definite statement *sua sponte*, which they have the freedom to do"); Fikes v. City of Daphne, 79 F.3d 1079, 1082–83 (11th Cir.1996) (finding that a more definite statement can tighten a complaint and clarify which of several possible claims are being asserted).

In a case such as this, where the plaintiff's claims are legally deficient and cannot be readily and clearly understood, Rule12(e) of the Federal Rules of Civil Procedure provides, in part, that the court may order a party to prepare: "a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Further, under this rule "[i]f the court orders a more definite statement and the order

is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order." Fed. R. Civ. P., Rule 12(e).

Here, we find that this particular complaint aptly:

> highlight[s] the particular usefulness of the Rule 12(e) motion for a more definite statement. Under Rule 12(e), [the court may order] a more definite statement "[i]f a pleading ... is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). . . . . When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claim for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific . . . defense. . . . . The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief.

Thomas v. Independence Tp., 463 F.3d 285, 301 (3d Cir. 2006)

Given the legal and factual ambiguity of the plaintiff's claims, and the shifting grounds upon which these claims appear to rest, we believe that the plaintiff should be required to provide a more definite statement of these claims, before the court is tasked with further assessing the legal merits of these alleged constitutional torts and engaging in an extended exegesis analyzing claims whose legal and factual elements remain uncertain. Therefore, it is recommended that the plaintiffs be directed pursuant to Rule 12(e) to submit a more definite statement of these claims.

## IV.    Recommendation

For the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss  (Doc. 14 ) be GRANTED; the defendants' motion to strike (Doc. 23) be DENIED, and that the plaintiff be directed to file a more definite statement of her retaining claims pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of April, 2016.

                                        S/Martin C.  Carlson

Martin C. Carlson
United States Magistrate Judge