IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KELLY CONARD,** | : | Civil No. 1:15-cv-0351 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **PENNSYLVANIA STATE POLICE,** et al., | : | |
| | : | |
| | : | |
| **Defendants.** | : | Judge Sylvia H. Rambo |

# MEMORANDUM

In this longstanding civil rights action, Plaintiff Kelly Conard, a former Pennsylvania State Police employee, asserts that her former supervisors retaliated against her for filing a lawsuit against them in 2006 by providing negative employment references. Defendants have moved for summary judgment, and Magistrate Judge Martin C. Carlson issued a report recommending that the court grant in part and deny in part the motion. Defendants have filed objections. For the reasons set forth below, the court will decline to adopt the magistrate judge's report and will grant Defendants' motion for summary judgment in its entirety.

1

**I.     Procedural History**

Plaintiff Kelly Conard ("Conard") brought the instant action under 42 U.S.C. § 1983 against her former employer, the Pennsylvania State Police ("State Police"), and her former State Police supervisors, Sergeants Joseph Tripp ("Sergeant Tripp") and Dennis Hile ("Sergeant Hile"). On May 24, 2016, the court dismissed the complaint for failure to state a claim upon which relief could be granted. (Doc. 33.) In doing so, the court held that the bulk of Conard's claims were barred because they had been adjudicated in a prior action which she initiated after she unsuccessfully sought reemployment by the State Police. The court also dismissed her claim that Defendants retaliated against her for having filed the prior action, finding that Conard had not sufficiently alleged facts giving rise to a causal inference of retaliation since as much as four years separated Conard's lawsuit and the allegedly retaliatory adverse job references. (Doc. 27.) Conard appealed, and two years later, on August 28, 2018, the Third Circuit Court of Appeals remanded the case for further consideration of Conard's retaliation claim, finding that "dismissal for lack of causation was premature and that Conard should be afforded the opportunity to develop proof of causation through discovery." *Conard v. Pa. State Police*, 902 F.3d 178, 183 (3d Cir. 2018).

Following discovery, the defendants moved for summary judgment, arguing that Conard has not shown that any retaliatory action took place, and further, that

Conard cannot provide a causal connection between her protected speech and the alleged retaliatory conduct. For her part, Conard concedes summary judgment as to Sergeant Hile and the State Police. After review, the magistrate judge recommended summary judgment as to Hile and the State Police,[1] but concluded that, while it is a close case, genuine issues of material fact preclude the entry of summary judgment against Sergeant Tripp on Conard's First Amendment retaliation claim. Sergeant Tripp filed objections to the magistrate judge's report and recommendation to which Conard did not respond. The motion for summary judgment is now ripe for consideration.

## II.     Factual Background[2]

Conard was employed by the State Police for seventeen years as a Police Communications Operator until she voluntarily retired in 2002 to move to Texas with her husband where she worked at both the Wichita County Sheriff's Department and American Medical Response as an emergency dispatcher. (*Id.* at ¶¶ 6-8.) Prior to leaving her employment with the State Police, Conard received both satisfactory and commendable performance ratings from her supervisors, Sergeants

---

[1] The court will adopt the report's recommendation to grant the motion for summary judgment as to the State Police and Sergeant Hile.

[2] Although Conard worked for the State Police for seventeen years, the record only includes performance reviews for the years 1998-1999, 1999-2000, and 2000-2001.

Tripp and Hile, in her yearly Employee Performance Reviews.[3] (*See* Doc. 86-5, Ex. E.) However, the reviews also criticized Conard for using excessive sick leave (*id.* at pp. 4, 8-9, and 13-14),[4] and indicated that she struggled to "maintain[ ] cooperative and positive work relationships"[5] (*id.* at p. 4 of 15).

In 2005, Conard returned to Pennsylvania and applied for her former position with the State Police. (*Id.* at ¶ 9, Doc. 86-4, p. 3 of 7.) Following an interview, the State Police conducted a background investigation, which included a reference check with her former supervisors. At that time, Sergeant Tripp described Conard "as being an abuser of sick leave" and "indicated that she was placed on sick leave restriction and when the restriction was removed, she would abuse sick leave again." (Doc. 86-4, p. 7 of 7.) He also noted that Conard "had personality conflicts with others and would avoid her supervisors." (*Id.*) Likewise, Sergeant Hile relayed that Conard "abused sick leave usage and was put on sick leave restriction" and that "she

---

[3] Although Conard worked for the State Police for seventeen years, the record only includes performance reviews for the years 1998-1999, 1999-2000, and 2000-2001.

[4] Specifically, the comments provided by both Sergeants Tripp and Hile between 1999 and 2000 regarding Conard's sick leave provide as follows: "Ratee has shown drastic improvement with the use of sick leave" (Doc. 86-5, p. 4 of 15); "Ratee has already used 13 sick days this year" (*id.* at p. 8 of 15); "Ratee only needs to improve on her sick leave usage to improve her overall evaluation" (*id.* at p. 9 of 15); "Ratee has used nine sick days so far this year") (*id.* at p. 13 of 15); and "Ratee has shown improvement in the use of leave during this rating period and it is hoped that such improvement will continue" (*id.* at p. 14 of 15).

[5] Conard's 1998-1999 Employee Performance Review states: "Ratee has shown improvement in maintaining cooperative and positive work relationships" (Doc. 86-5, p. 4 of 15). While this comment notes that her performance in this regard had improved, it also reasonably suggests that her ability to maintain positive relationships was, at least for a time, a concern.

4

did not always get along with her fellow coworkers." (*Id.*) As a result of that investigation, Conard was not recommended for rehire and was informed by letter in February 2005 of this decision. (Doc. 86-4, pp. 3-4 of 7.)

Conard thereafter contacted the State Police and requested an explanation for its decision. In an email dated March 17, 2005, Linda Bonney, the director of human resources for the State Police, wrote that the background investigation revealed that Conard was placed on sick leave restriction when formerly employed by the State Police and that there were some tardiness and interpersonal issues. (*Id.* at p. 4 of 7.) The email also stated that Conard was not recommended for employment by her former supervisors. (*Id.* at p. 5 of 7.)

On July 24, 2006, Conard filed her initial civil rights action in this court against the State Police, Sergeant Hile, and Sergeant Tripp, asserting that they discriminated and retaliated against her because of previous employment disputes. *See Conard v. Commonwealth of PA State Police, et al.*, No. 4:06-cv-1450. The 2006 lawsuit was dismissed by the district court at summary judgment and affirmed by the Third Circuit Court of Appeals in an unpublished opinion. *Conard v. Pennsylvania State Police*, 360 F. App'x 337 (3d Cir. 2010).

Although Conard did not actively seek additional employment from 2005 to 2008, in early 2005 she hired Allison & Taylor, a professional reference check company, to check her references from the State Police. An April 20, 2005 report

prepared by Allison & Taylor states that Sergeant Tripp indicated he would not rehire Conard due to her use of excessive use of sick leave and that her weaknesses included: "getting along with others (this was poor)[;] dependability[; and] can't take constructive criticism." (Doc. 81-6, pp. 13-14 of 34.) Conard again hired Allison & Taylor in 2011, 2013, and 2014 to check her references with the State Police, but each time they contacted Sergeant Tripp in those years he referred the company to the human resources department in accordance with State Police policy. [6] (Doc. 81, ¶¶ 11-15, 39-41.)

In 2014, Conard began to ask prospective employers for a written explanation as to why she was not selected for employment. (*Id.* at ¶ 21.) In an email dated July 29, 2014, a manager of a UPS Store in Charleston, South Carolina wrote: "due to your references stating that you have a problem with tardiness and abuse of sick leave, yours was not selected for further consideration. (*Id.* at ¶¶ 22-23; Conard Deposition Exhibit 1.) In an email dated October 19, 2015, the owner of B&N Auto stated he was "concerned about the negative endorsement from [Conard's] previous employer." (Doc. 81, ¶¶ 24-25.; Conard Deposition Exhibit 2.) Neither email referenced the State Police or Sergeant Tripp.

---

[6] Sergeant Tripp testified under oath that, aside from the reference company's inquiries, he has never received a phone call from a potential employer to give an employment reference, and if he had, he would have followed State Police protocol and referred the employer to human resources. (Doc. 81, ¶¶ 45 and 48.)

In 2014, Conard applied to Regenerating Wristbands and elected to show the owner the "negative references" that she had received from Allison & Taylor's reference check. (*Id.* at ¶¶ 26-27.) In response, the owner told her that he could not hire her until she "rectified" the situation with the State Police. (*Id.* at ¶ 28.)

Conard filed the instant action against the State Police, Sergeant Hile, and Sergeant Tripp on February 24, 2015, asserting a claim for First Amendment retaliation. Conard alleges that in the years following the filing of her initial lawsuit and up to the time that the record closed in this case, she has been unable to obtain employment. She claims that the defendants have provided prospective employers with knowingly false and negative references that do not reflect her exemplary record as a State Police employee in retaliation for her having filed the prior lawsuit.

On May 25, 2015, Conard hired John DePietro ("Investigator DePietro") of JDI Investigations to serve the instant lawsuit on Sergeants Tripp and Hile and to investigate the negative references being given to her potential employers. (*Id.* at ¶ 29.) In a report dated June 20, 2018, Investigator DePietro recounts that, upon being served, Sergeant Tripp commented that "this is round two" and asked Investigator DePietro if he had ever met Conard. (*Id.* at p. 4 of 11.) Investigator DePietro opines that Sergeant Tripp's "statements, along with his obvious hostility towards Ms. Conard, provide[] significant insight and a probable explanation as to the origins of the negative references." (*Id.*)  He notes that he himself declined to hire Conard for

7

an open clerical position in 2015 because of Sergeant Tripp's comments. (*Id.*; Doc. 86-2, p. 2.) Investigator DePietro further asserts in his report that he "contacted some potential employers" and "[t]he negative references were the primary reasons to decline to hire Ms. Conard" (*id.* at p. 4 of 7); however, he fails to specifically identify any of these employers (*see generally id.*).

Defendants have moved for summary judgment, arguing, *inter alia*, that Conard has not provided any evidence to show that Sergeant Tripp took any retaliatory action against her. (Doc. 79.)

## III. Legal Standard

### A. Review of Magistrate Judge's Report & Recommendation

When a party objects to a magistrate judge's report and recommendation, the district court undertakes *de novo* review of the contested portions of the report. *See E.E.O.C. v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)); *see also* FED. R. CIV. P. 72(b)(3). In this regard, Local Rule of Court 72.3 requires written objections to "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." LOCAL RULE 72.3. The court affords "reasoned consideration" to uncontested portions of the report before adopting it as the decision of the court. *City of Long Branch*, 866 F.3d at 100 (quoting *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)).

### B.     Summary Judgment

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forward with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). Only if this threshold is met may the cause of action proceed. *See Pappas*, 331 F. Supp. 2d at 315.

## IV.   Discussion

### A.     Plaintiff's Failure to Directly Rebut Defendants' Statement of Facts with Citations to the Record Means She Has Failed to Raise Any Genuine Issues of Material Fact.

Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving

party contends there is no genuine issue to be tried." A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* A failure to file a counter-statement equates to an admission of all facts set forth in the movant's statement. *Id.* This local rule requires the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (internal quotations omitted).

Conard did not respond to Defendants' Rule 56.1 statement of material facts in any fashion. Not only did she neglect to file a separate statement, the statement of facts contained within her opposing brief is only two paragraphs and contains no citations to the record. Conard's failure to file the requisite counter-statement of facts requires the court to deem Defendants' facts set forth in their statement admitted. *See Goss v. United States*, No. 11-cv-1964, 2015 WL 1944985, at *6 (M.D. Pa. April 29, 2015) (failure to follow Local Rule 56.1 means that those facts are deemed admitted); *Doe v. Winter*, No. 04-cv-2170, 2007 WL 1074206, at *1 n.2 (M.D. Pa. April 5, 2007) (same). On this basis alone, the court should grant Defendants' motion for summary judgment. Nonetheless, for the sake of fully evaluating Plaintiff's arguments, the court has engaged in a thorough, independent review of

the record, and where certain facts are both asserted by Conard through her brief in opposition to the motion for summary judgment and supported by the record, the court supplemented the factual background and will address those arguments below.

### B. Plaintiff Has Insufficient Evidence to Give Rise to Any Reasonable Inference of Retaliation Against Her By Anyone For Her Exercising Her First Amendment Rights.

To prevail on her First Amendment retaliation claim against Sergeant Tripp, Conard was required to show that: "'she engaged in constitutionally protected conduct, (2) there was retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights, and (3) there was a causal link between the constitutionally protected conduct and the retaliatory action.'" *Conard*, 902 F.3d at 183. (quoting *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017)) (brackets omitted). Because there is no doubt that Conard's initiation of the first action was constitutionally protected conduct, the court moves to the other elements where Conard's claim clearly fails.

First and foremost, Conard has presented no evidence that Sergeant Tripp has provided even one negative employment reference—let alone "repeated" negative references—to a potential employer.[7] The closest she comes are the 2005 statements

---

[7] For purposes of resolving this motion, the court will assume that providing negative employment references constitute retaliation sufficient to deter a person of ordinary firmness from exercising her constitutional rights. *But see Conard*, 902 F.3d at 184 ("[T]he question of whether a negative reference would be enough to satisfy the 'deterrence' element of Conard's claim is debatable.").

11

Sergeant Tripp made to the State Police during their background investigation regarding Conard's potential reemployment and to Allison & Shane in response to a reference inquiry.[8] However, those statements were made *before* the initial lawsuit was filed and therefore they could not have been made in retaliation for its filing.[9] Indeed, Conard acknowledges that the only admissible "specific statement[ ] of retaliation made by [Sergeant] Tripp to which [she] can identify" is the statement he made to Investigator DePietro upon being served.[10] (Doc. 86, p. 9 of 16.) However, Sergeant Tripp's statement that "this is round two" does not constitute a negative employment reference as it was made in response to being served with a lawsuit and Investigator DePietro had not identified himself as a potential employer.

As for Investigator DePietro's report, he fails to identify any potential employers. Instead, he merely references an unnamed manager of a UPS Store in Charleston, South Carolina (presumably the same manager who wrote the email

---

[8] The court would be remiss not to point out here that Allison & Shane is a professional reference check company rather than a prospective employer and therefore the statements Sergeant Tripp made to them was not in the context of providing an employment reference.

[9] To the extent Conard also relies on Regenerating Wristbands' rejection of her application for employment, this rejection does not support her case because it was Conard herself rather than Sergeant Tripp who provided Regenerating Wristbands with the negative references. Likewise, the rejection letters from UPS and B&N Auto do not support her retaliation claim as the emails fail to state whether the references came from Sergeant Tripp, the State Police, or one of Conard's subsequent employers in Texas.

[10] Conard also relies on the statements Sergeant Tripp allegedly made to Ms. O'Conner, but for the reasons explained above, *supra* n.7, those statements will not be considered by the court.

referenced above), a unnamed manager of a Wal-Mart in South Carolina, and a "Ms. O'Connor." Regarding Ms. O'Conner, Investigator DePietro states:

> I also conducted an interview with a Ms. O'Connor in the latter part of 2015. Ms O'Connor had a retail business that she traveled with. She too called Ms. Conard's references. Joseph Tripp gave Ms. Conard negative references again. I sent Ms. O'Connor her statement and she had it notarized and sent it back to me. I then mailed it to Ms. Conard in South Carolina as that is where she was at the time. Ms. Conard came back to Pennsylvania as her mother was ill and passed away in March, 2018. Ms. Conard does not have the notarized document with her but I can testify to it as I was the investigator who conducted the interview and in transacting it. Since I have observed Joseph Tripp in person and witnessed his hostility and negative references toward Ms. Conard what Ms. O'Connor told me during my interview with her was something I have now observed and witnessed firsthand with Joseph Tripp.

(Doc. 86-1, p. 5 of 7.)

The magistrate judge erred in relying on the hearsay within hearsay evidence of Ms. O'Connor. *See Shelton v. University of Medicine & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000) (citing *Stelwagon Mfg. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1275 n.17 (3d Cir. 1995) ("In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial."). The alleged statements were contained within a report by Investigator DePietro who vaguely recited what Ms. O'Conner allegedly told him. While he says that she provided him with a notarized written statement, the statement was never provided to Defendants during discovery (Doc. 90, p. 7) and is now apparently lost. "Trust me, she said it" hearsay within hearsay certainly would not

13

be admissible at trial and therefore cannot be considered at the summary judgment stage. Compounding the admissibility issue is the fact that the record contains no information regarding Ms. O'Connor's proper identity or the name of her business. (*Id.* at p. 8.) The same is true for the manager of the Wal-Mart store. Accordingly, this evidence will not be considered by the court.

Because she is unable to offer evidence that Sergeant Tripp has given her potential employers negative references, Conard relies almost exclusively on Investigator DePietro's suppositions and theories as well as her own unsupported accusations. Both Conard and Investigator DePietro rely heavily on their own tenuous theory that because Sergeant Tripp's performance reviews of Conard were largely positive, Sergeant Tripp must be giving negative references "not based on fact but on anger and animus over the 2006 lawsuit." (Doc. 86, p. 10; *see also* Doc. 86-1, p. 3 ("[T]he negative references are not merited or based on any identifiable job performance shortcomings during her employment.) Even assuming, *arguendo*, that Sergeant Tripp has provided negative references to potential employers consistent with his statements to Allison & Taylor—*i.e.*, that Conard used excessive sick leave and had interpersonal issues—Conard was required to show that the filing of her initial lawsuit was the reason Sergeant Tripp provided those negative references. *See Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014) (holding that the plaintiff must show First Amendment Activity was a substantial

and motivating factor in the retaliatory action). However, Sergeant Tripp noted these issues in his performance reviews of Conard between 1998 and 2001 and did not recommend Conard for rehire with the State Police in 2005 due to these very same issues. Even taking all reasonable inferences in favor of Plaintiff, it is clear that Sergeant Tripp's impression was formed prior to Conard's filing of the 2006 lawsuit, and therefore assuming he made similar statements to potential employers and using that assumption as the chief inference of retaliation is tenuous at best.

Summary judgment is "put up or shut up time" for the nonmovant. *See Daubert v. NRA Grp.*, 861 F.3d 382, 391 (3d Cir. 2017) (citation omitted). Conard was required to support her First Amendment retaliation claim with evidence and demonstrate that genuine disputes of fact remain for trial. *See* FED. R. CIV. P. 56(e). Speculation, conjecture, and suspicion will not suffice. *See Wharton v. Danberg*, 854 F.3d 234, 244 (3d. Cir. 2017). Outside of theories and conjecture, Conard offers no evidence that Sergeant Tripp has provided negative employment references in retaliation for her filing of the initial lawsuit. As such, Sergeant Tripp is entitled to summary judgment.

## V. <u>Conclusion</u>

For the reasons set forth above, the court will adopt Judge Carlson's recommendation as to the State Police and Sergeant Hile but decline to adopt the

recommendation as to Sergeant Tripp. Accordingly, the court will grant Defendants' motion for summary judgment and close this case.

An appropriate order shall issue.

s/Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge

Dated: November 30, 2020

!

!